WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for the Defendants
3 Gannett Drive
White Plains, NY  10604
(914) 323-7000
Attn:  Peter A. Meisels (PM-5018)
       Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
JOHN CARELLO,                                          :
                                                       :   07 Civ. 2914 (CLB)(MDF)
                    Plaintiff,                         :
                                                       :
    -against-                                          :   DEFENDANTS'
                                                       :   STATEMENT OF
THE CITY OF NEW ROCHELLE, THE NEW ROCHELLE             :   UNDISPUTED FACTS
POLICE DEPARTMENT, P.O. GEORGE ROSENBERGEN,            :   PURSUANT TO
AND P.O. JOHN/JANE DOES,                               :   LOCAL RULE 56.1
                                                       :
                    Defendants.                        :
------------------------------------------------------------------------ x

Defendants the City of New Rochelle (s/h/a "The City of New Rochelle" and "The New Rochelle Police Department") and Lieutenant George Rosenbergen (s/h/a "P.O. George Rosenbergen") (collectively, the "Defendants") hereby submit the following statement of material facts pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York. This Rule 56.1 Statement is submitted in support of the Defendants' motion for summary judgment on grounds of qualified immunity, which is brought pursuant to the procedures set forth in paragraph 3(d) of the Civil Case Discovery Plan and Scheduling Order, entered on July 20, 2007.

1735168.1

## The Parties

1. Plaintiff John Carello ("Carello") is an individual currently residing at 39 High Street, Armonk, New York. *See* Deposition of John Carello, taken October 18, 2007, at 4:8-12.

2. Defendant George Rosenbergen ("Lieutenant Rosenbergen") is, and at all relevant times has served as, a member of the New Rochelle Police Department ("NRPD"). On January 11, 2006, he held the rank of Sergeant. He was promoted to the rank of Lieutenant in May 2006. *See* Declaration of Lalit K. Loomba, dated November 14, 2007, at ¶8.

3. Defendant the City of New Rochelle ("City") is a municipal corporation existing under the laws of the state of New York.

## Procedural History

4. This case concerns an incident between Carello and Lieutenant Rosenbergen that took place on January 11, 2006.

5. Carello commenced the instant action by filing a summons and complaint on April 11, 2007. A true copy of the summons and complaint is annexed as Exhibit A.[1]

6. Lieutenant Rosenbergen and the City filed their answer on June 29, 2007. A true copy of the answer is annexed as Exhibit B.

7. The Court issued a Scheduling Order on July 20, 2007. A true copy of the Scheduling Order is annexed as Exhibit C.

8. Defendants took the deposition of Carello on October 18, 2007. Relevant pages of the deposition of John Carello, taken October 18, 2007 ("Carello Dep.") are annexed as Exhibit D.

1735168.1

## Carello's Version of the Events[2]

9. On January 11, 2006, Carello was stopped for speeding on North Avenue, in the vicinity of Iona College, in the City of New Rochelle. Carello Dep. at 17:22-21:7.

10. Carello claims the officer who stopped him was not wearing a regular police uniform. Carello Dep. at 22:4-15.

11. The officer took Carello's license and registration and returned to his vehicle, while Carello waited in his car. Carello Dep. at 27:6-28:11.

12. The officer returned Carello's license and registration and handed him a speeding ticket. Carello Dep. at 28:16-29:2.

13. Carello then signaled with his left hand and started to pull his car away from the curb. Carello Dep. at 30:12-31:3.

14. At this point, Carello was stopped a second time by the same officer. Carello Dep. at 30:12-31:21.

15. The officer approached Carello's vehicle and told him he was going to issue a ticket for failing to signal a lane change and for failing to wear a seat belt. Carello Dep. at 31:22-32:6.

16. As the officer returned to his vehicle, Carello called 911. Carello Dep. at 35:22-40:22.

17. Carello thereafter saw a marked police car arrive at the scene and park behind the first officer's vehicle, but the driver of the marked car did not exit his car. Carello Dep. at 41:3-42:11.

---

[1] All exhibits referenced herein are annexed to the accompanying declaration of Lalit K. Loomba, Esq.
[2] Pursuant to paragraph 3(d) of the Court's Scheduling Order, Carello's version of the events is assumed to be true for purposes of this motion only.

18. The first officer then issued Carello two additional tickets, and returned to his vehicle. Carello Dep. at 42:12-15. Eventually, Carello pled guilty to the speeding ticket. *Id.* at 131:8-132:7.

19. After receiving the second and third tickets, Carello immediately drove to NRPD headquarters with the intention of making a civilian complaint about the officer. Carello Dep. at 46:3-23.

20. Carello was brought into an interview room by Lieutenant Rosenbergen. Carello Dep. at 47:9-50:12.

21. Carello told Lieutenant Rosenbergen that he thought he had been harassed by the officer. Carello Dep. at 50:14-17.

22. According to Carello, Lieutenant Rosenbergen told him he was not harassed, after which they both walked out of the interview room. Carello Dep. at 50:14-51:8.

23. Outside the interview room, Carello told Lieutenant Rosenbergen that he wanted to see a supervisor. Carello Dep. at 51:4-8.

24. Thereafter, Carello waited in the public lobby area of police headquarters to speak with a supervisor. Carello Dep. at 51:9-54:9. He waited about 15 to 20 minutes but nobody came out. *Id.*

25. Carello approached the public window and asked if he could make an appointment with the Police Commissioner or someone in the Internal Affairs Department. Carello Dep. at 54:13-19.

26. After approximately 10 minutes more, Lieutenant Rosenbergen appeared in the public lobby and asked Carello to return to the same interview room where they had met before. Carello Dep. at 55:5-56:13.

1735168.1

27.   Lieutenant Rosenbergen brought something that he wanted to read to Carello. Carello Dep. at 57:12-58:23.

28.   Carello again told Lieutenant Rosenbergen that he had been harassed, and also asserted he felt threatened by the officer who had issued the traffic tickets. Pointing his finger, Carello demanded to know why nobody had responded to his 911 call. Carello Dep. at 59:11-60:15.

29.   Lieutenant Rosenbergen responded by saying "don't point your finger at me," or words to that effect. Carello Dep. at 60:8-9.

30.   According to Carello's version of the events, Lieutenant Rosenbergen thereafter got up, grabbed Carello around the front of the neck, pushed his seat against the wall and lifted Carello up into a standing position. Carello Dep. at 60:22-64:12.

31.   According to Carello, Lieutenant Rosenbergen then grabbed Carello's jacket from the back of the neck and pulled him out of the interview room. Carello Dep. at 64:13-65:22.

32.   According to Carello, Lieutenant Rosenbergen then pushed Carello out into the public lobby area; he caught his balance and did not fall to the floor. Carello Dep. at 67:12-68:5.

33.   Carello then left Police Headquarters and went to his car. Carello Dep. at 71:8-15.

34.   Carello telephoned his brother and described the events that had occurred. Carello Dep. at 71:6-72:10.

35.   Carello, accompanied by his brother, then met with Lieutenant Masseo at Police Headquarters. Carello Dep. at 76:13-77:25.

36.   During his meeting with Lieutenant Masseo, Carello filled out a written civilian complaint. Carello Dep. at 78:2-23.

37. A true copy of the written complaint is annexed as Exhibit E.

38. In the written complaint, Carello wrote that he pointed his finger at Lieutenant Rosenbergen. Ex. E; Carello Dep. at 83:10-20.

39. After meeting with Lieutenant Masseo, Carello went to the "On the Waterfront" restaurant in New Rochelle, where pictures were taken of his neck. Carello Dep. at 84:3-20.

40. Upon information and belief, a true copy of a picture taken of Carello at the "On the Waterfront" restaurant is annexed as Exhibit F.

41. Carello claims to have had pain in his back, neck and head as a result of the incident. Carello Dep. at 89:12-25.

42. Other than a chiropractor, Kenneth Trotta, Carello did not see any other medical professionals for any of the physical injuries that he claims were caused by the incident. Carello Dep. at 99:3-105:25.

43. Carello never went to a hospital or emergency room for any of the physical injuries that he claims were caused by the incident. Carello Dep. at 105:3-25.

44. Regarding Kenneth Trotta, the chiropractor, Carello had seen him for chiropractic adjustments prior to January 11, 2006. Carello Dep. at 99:24-100:25. Carello could not recall when or how many times he was treated by Kenneth Trotta after the incident. *Id.*

45. Carello also claims to have suffered emotional injuries -- specifically, fear, anxiety and depression -- as a result of the incident. Carello Dep. at 106:12-21.

46. Between the incident date, January 11, 2006, and August 2007, Carello did not receive any treatment for any emotional or psychological symptoms. Carello Dep. at 122:14-123:25.

47. In August 2007, Carello admitted himself into to Harbor Pointe, what Carello described as an "inpatient institution for psychiatry and psychology," in Baltimore, Maryland. Carello Dep. at 107:13-108:25.

48. According to Carello, the January 11, 2006 incident was "one of the participating factors" that caused him to admit himself into Harbor Pointe. Carello said that another factor was his divorce in 2003. Carello Dep. at 109:10-110:14.

49. Carello testified that there were numerous other factors that caused his psychiatric hospitalization. When asked to specify he said: "the way I was dealing with my daily activities," and that he had retired young and had "a lot of time on his hands." Carello Dep. at 110:15-111:9.

50. Carello was not prescribed any psychiatric medication at Harbor Pointe, and he has never taken any such medication. Carello Dep. at 119:19-120:12.

51. Upon information and belief, Carello voluntarily admitted himself into Harbor Pointe to seek help for a gambling addiction. *See* www.lostbet.com.

52. Other than his testimony concerning the incident with Lieutenant Rosenbergen, Carello has no other information concerning his allegations that the City (i) authorized, tolerated or ratified Rosenbergen's alleged misconduct; (ii) failed to discipline, restrict or control employees; (iii) failed to take adequate protections in hiring, training, retaining and/or promoting employees; and/or (iv) failed to establish a meaningful system for dealing with complaints of police misconduct. Carello Dep. at 125:2-129:19.

1735168.1

Dated: White Plains, New York
       November 14, 2007

                                      WILSON, ELSER, MOSKOWITZ,
                                      EDELMAN & DICKER LLP
                                      Attorneys for the Defendants

                                      By: Lalit K. Loomba (LL-9755)

                                      3 Gannett Drive
                                      White Plains, NY 10604
                                      (914) 323-7000
                                      File No. 07367.00062