WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for the Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn:  Peter A. Meisels (PM-5018)
       Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x
JOHN CARELLO,                                              :
                                                           :    07 Civ. 2914 (CLB)(MDF)
              Plaintiff,                                   :
                                                           :
       -against-                                           :
                                                           :
THE CITY OF NEW ROCHELLE, THE NEW ROCHELLE                 :
POLICE DEPARTMENT, P.O. GEORGE ROSENBERGEN,
AND P.O. JOHN/JANE DOES,                                   :
                                                           :
              Defendants.                                  :
-------------------------------------------------------------------------- x

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannet Drive
White Plains, NY 10604
(914) 323-7000

1734806.1

# TABLE OF CONTENTS

Page

**Preliminary Statement** ................................................................................................1

**Pertinent Facts and Procedural History** ....................................................................1

**Argument** ....................................................................................................................5

    **POINT I**

    **ROSENBERGEN IS ENTITLED TO QUALIFIED**
    **IMMUNITY FROM SUIT** ..................................................................................5

        A.    The Qualified Immunity Standards ........................................................5

        B.    Carello Cannot Demonstrate A Violation
               of Clearly-Established Law .....................................................................6

    **POINT II**

    **THE CITY IS ENTITLED TO**
    **SUMMARY JUDGMENT** ...................................................................................9

**Conclusion** ................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                     **Page**

*Amato v. City of Saratoga Springs,* 170 F.3d 311 (2d Cir. 1999).........10

*Anderson v. Creighton,* 483 U.S. 635, 107 S. Ct. 3034 (1987) .........5

*Bolden v. Village of Monticello,* 344 F. Supp.2d 407 (S.D.N.Y. 2004) .........5

*Bove v. New York City,*
1999 U.S. Dist. LEXIS 12112 (S.D.N.Y. Aug. 6, 1999).........7, 8

*Brosseau v. Haugen,* 543 U.S. 194, 125 S. Ct. 596 (2004) .........6

*Butler v. New York State Dept. of Law,*
998 F. Supp. 336 (S.D.N.Y. 1998) .........10

*Cunningham v. Rodriguez,*
2002 U.S. Dist. LEXIS 22660 (S.D.N.Y. Nov. 22, 2002).........7

*D'Angelo-Fenton v. The Town of Carmel,*
470 F. Supp.2d 387 (S.D.N.Y. 2007).........10

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727 (1982) .........5

*Hemphill v. Schott,* 141 F.3d 412 (2d Cir. 1998).........6

*Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973).........6, 7

*Lennon v. Miller,* 66 F.3d 416 (2d Cir. 1995).........6

*Malley v. Briggs,* 475 U.S. 335, 106 S. Ct. 1092 (1986) .........6

*Monell v. Department of Soc. Services of the City of New York,*
436 U.S. 658, 98 S. Ct. 2018 (1978).........9

*Riccuiti v. New York City Transit Auth.,*
941 F.2d 119 (2d Cir. 1991).........9, 10

*Rochin v. California,* 342 U.S. 165 (1952) .........6

*Rodriguez v. Phillips,* 66 F.3d 470 (2d Cir. 1995).........6

*Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (2001) .........5

*Smith v. City of New York,* 290 F. Supp.2d 317 (E.D.N.Y. 2003).........9

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                                                             **Page**

*Sound Aircraft Servs., Inc. v. Town of East Hampton,*
192 F.3d 329 (2d Cir. 1999) .................................................................................... 5

*Tierney v. Davidson,* 133 F.3d 189 (2d Cir. 1988) ............................................................ 7

**Statutes**                                                                                                          **Page**

28 U.S.C. §1367(c)(3) ........................................................................................ 10

Defendants the City of New Rochelle (the "City") and Lieutenant George Rosenbergen ("Rosenbergen") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment.

### Preliminary Statement

The plaintiff John Carello ("Carello") alleges that he was trying to make a civilian complaint about a New Rochelle Police Officer when he claims that he was forcibly removed from police headquarters by Lieutenant Rosenbergen. Since Carello was never under arrest – in fact, he claims to have been forced *away* from police headquarters -- his claim of excessive force must be analyzed under the "shock the conscience" standard of the Fourteenth Amendment. Even assuming the truth of Carello's allegations and his version of the events, Carello has not demonstrated, and cannot show, conduct so severe or outrageous that it rises to the level of a violation of the Fourteenth Amendment. Lieutenant Rosenbergen is therefore entitled to qualified immunity form suit. Carello has not alleged nor can he show that his injuries were caused by a municipal policy. In the absence of any such policy, and an underlying constitutional violation, there is no basis to assert liability against the City. The Defendants are therefore entitled to summary judgment dismissing Carello's complaint with prejudice.

### Pertinent Facts and Procedural History

The facts and procedural history are set forth in the accompanying statement of undisputed facts pursuant to Local Rule 56.1 (the "Rule 56.1 Statement"), to which the Court is respectfully referred. In preparing their Rule 56.1 statement, and for purposes of the instant motion only, the Defendants have assumed the truth of the factual allegations in Carello's complaint, as well as Carello's version of events as he told in his deposition, taken October 18, 2007, except to the extent of facial absurdity. All exhibits referenced herein are annexed to the

accompanying declaration of Lalit K. Loomba, Esq.

On January 11, 2006, Carello was stopped for speeding on North Avenue, in the City of New Rochelle. Rule 56.1 Statement, at ¶9. Carello was approached by an officer who was not wearing a regular uniform. *Id.* at ¶10. After the officer handed Carello a speeding ticket, Carello signaled with his hand and started to pull his car away from the curb. *Id.* at ¶¶11-13. The officer then stopped Carello a second time, and issued additional tickets for changing lanes without signaling and failing to wear a seatbelt. *Id.* at ¶¶14-15. As the officer was writing up these other tickets, Carello called 911. *Id.* at ¶16. Although Carello noticed a marked police car drive up and park behind the first officer's vehicle, Carello never spoke with another police officer at the scene. *Id.* at ¶17.

After receiving his traffic tickets, Carello drove to New Rochelle Police Headquarters with the intention of making a complaint about the non-uniformed officer who had just issued the tickets. Rule 56.1 Statement at ¶19. Carello was brought into an interview room by Lt. Rosenbergen, *id.* at ¶20, and there told Rosenbergen that he thought he had been harassed by the officer on North Avenue. *Id.* at ¶21. According to Carello, Lieutenant Rosenbergen told him he was not harassed. *Id.* at ¶22. Thereafter, they both exited the interview room. *Id.*

Outside the interview room, Carello told Lieutenant Rosenbergen that he wanted to see a supervisor. Rule 56.1 Statement at ¶23. Thereafter, Carello waited in the public lobby area of police headquarters for about 15 to 20 minutes but nobody appeared. *Id.* at ¶24. Carello then approached the public window and asked if he could make an appointment with the Police Commissioner or with someone in the Internal Affairs department. *Id.* at ¶25.

After approximately 10 minutes more, Lieutenant Rosenbergen appeared in the public lobby and asked Carello to return to the same interview room where they had met before. Rule

56.1 Statement, at ¶26. Lieutenant Rosenbergen had something that he wanted to read to Carello. *Id.* at ¶27. Carello again claimed he had been harassed by the officer who issued the traffic tickets, and further asserted that he felt threatened by the officer. *Id.* at ¶28. Pointing his finger, Carello demanded to know why nobody had responded to his 911 call. *Id.* Lieutenant Rosenbergen responded by saying "don't point your finger at me," or words to that effect. *Id.* at ¶29.

According to Carello, Lieutenant Rosenbergen then got up, grabbed Carello around the front of the neck, pushed his seat against the wall and lifted Carello up into a standing position. Rule 56.1 Statement, at ¶30. Carello then claims that Rosenbergen grabbed his jacket from the back of the neck and pulled Carello out of the interview room. *Id.* at ¶31. Carello then claims that Rosenbergen pushed him into the public lobby area, although he caught his balance and did not fall to the floor. *Id.* at ¶32.

Thereafter, Carello left police headquarters and went to his car. Rule 56.1 Statement, at ¶33. He telephoned his brother and described the events that had occurred. *Id.* at ¶34. Carello, accompanied by his brother, then met with Lieutenant Masseo at Police Headquarters. *Id.* at ¶35. During his interview with Lieutenant Masseo, Carello filled out a written civilian complaint. *Id.* at ¶36; Ex. E. In his written civilian complaint, Carello admitted that he pointed his finger at Lt. Rosenbergen. *Id.* at ¶38; Ex. E.

After meeting with Lieutenant Masseo, Carello went to the "On the Waterfront" restaurant in New Rochelle, where pictures were taken of his neck. Rule 56.1 Statement, at ¶39. A copy of a picture, showing two scratches to the side of Carello's neck, is annexed as Exhibit F. Carello claims to have suffered pain in his back, neck and head as a result of the incident. *Id.* at

¶41. But other than a chiropractor, Kenneth Trotta,[1] Carello did not see any other medical professionals for any of the physical injuries he claims were caused by the incident. *Id.* at ¶42. Likewise, Carello never went to a hospital or emergency room for any of the physical injuries he claims were caused by the incident. *Id.* at ¶43.

Carello also claims to have suffered emotional injuries -- specifically, fear, anxiety and depression -- as a result of the incident. Rule 56.1 Statement, at ¶45. Between January 11, 2006, and August 2007, however, Carello did not receive any treatment for any emotional or psychological symptoms. *Id.* at ¶46. In August 2007, a year-and-a-half after the incident, Carello admitted himself into a facility called Harbour Pointe, in Baltimore, Maryland. *Id.* at ¶47. Carello described Harbour Pointe as an "inpatient institution for psychiatry and psychology." *Id.* Upon information and belief, however, Harbour Pointe is actually a residential facility for compulsive gamblers. *See* www.lostbet.com.

According to Carello, the January 11, 2006 incident was "one of the participating factors" that caused him to admit himself into Harbour Pointe. *Id.* at ¶48. He said another factor was his divorce in 2003. *Id.* Carello said there were numerous other factors. When asked to specify he said: "the way I was dealing with my daily activities," and that he had retired young and had "a lot of time on his hands." *Id.* at ¶49. Carello was not prescribed any psychiatric medication at Harbor Point, and he has never taken any such medication. *Id.* at ¶50.

Carello commenced the instant action by filing a summons and complaint on April 11, 2007. Rule 56.1 Statement, at ¶5; Ex. A. The Defendants filed their answer on June 29, 2007. *Id.* at ¶6; Ex. B. The Court issued a scheduling order on July 20, 2007. *Id.* at ¶7; Ex. C. Carello was deposed on October 18, 2007. *Id.* at ¶8; Ex. D.

---

[1] Regarding Kenneth Trotta, the chiropractor, Carello admitted that he had seen him prior to the incident, and could not recall when or how many times he went to see him afterwards. Rule 56.1 Statement, at ¶46.

**Argument**

**POINT I**

**ROSENBERGEN IS ENTITLED TO
QUALIFIED IMMUNITY FROM SUIT**

A.  <u>The Qualified Immunity Standards</u>

The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Qualified immunity "serves important interests in our political system," *Sound Aircraft Servs., Inc. v. Town of East Hampton,* 192 F.3d 329, 334 (2d Cir. 1999), by ensuring that the threat of personal liability does not "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987). In light of the underlying rationale for the defense, the Supreme Court has directed that "where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S. Ct. 2151, 2156 (2001).

"Qualified immunity shields a public official from civil liability when his conduct does not violate a clearly established statutory or constitutional right. A police officer is qualifiedly immune from suit if (1) his conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for the officer to believe his conduct did not violate clearly established constitutional rights." *Bolden v. Village of Monticello,* 344 F. Supp.2d 407, 410 (S.D.N.Y. 2004) (citations and internal quotes omitted). The objective reasonableness of an officer's belief "is established where 'officers of reasonable competence could disagree' as to the

legality of the [officer's] actions." *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 106 S. Ct. 1092 (1986)). Hence, if this Court "determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the [Lt. Rosenbergen's alleged] conduct under the circumstances, summary judgment . . . is appropriate." *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir. 1995).

"Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S. Ct. at 1096.

B.   Carello Cannot Demonstrate A Violation of Clearly-Established Law

Carello does not claim to have been seized or otherwise placed under arrest. In fact, to the contrary, his allegation is that excessive force was used by Lieutenant Rosenbergen in forcing Carello away from police headquarters. Rule 56.1 Statement, at ¶¶26-33. Outside the context of a custodial arrest, claims for excessive force are governed by Due Process Clause of the Fourteenth Amendment.[2] *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir. 1998) (citing *Rodriguez v. Phillips,* 66 F.3d 470, 477 (2d Cir. 1995)). To establish liability under the Due Process Clause, Carello must demonstrate that he was subjected to conduct that "'shocks the conscience.'" *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973) (quoting *Rochin v. California,* 342 U.S. 165, 172 (1952)). Under this standard, courts will consider "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort

---

[2] Although Carello's complaint also references the First, Fourth, Fifth and Eighth Amendments to the United States Constitution, Ex. A., his version of events only sets forth a violation of the Fourteenth Amendment.

- 6 -

1734806.1

to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson,* 481 F.2d at 1033.

Focusing on the amount and degree of force, and the extent of any resulting injury inflicted, courts have refused to find a violation of the Fourteenth Amendment where the injury suffered is *de minimis* and not substantiated by objective medical evidence. *Tierney v. Davidson,* 133 F.3d 189, 199 (2d Cir. 1988); *Bove v. New York City,* 1999 U.S. Dist. LEXIS 12112 (S.D.N.Y. Aug. 6, 1999); *see also Cunningham v. Rodriguez,* 2002 U.S. Dist. LEXIS 22660 (S.D.N.Y. Nov. 22, 2002) (ruling under the Eighth Amendment).

The decision in *Bove* is particularly instructive. In *Bove,* the plaintiff alleged excessive force against New York City police officers who responded to a report of domestic violence. The plaintiff alleged that he was beaten about his body with night sticks and shoes. *Bove,* 1999 U.S. Dist. LEXIS 12112, *d.* at *2. The plaintiff was not placed into custody, and after the officers left, he called police headquarters to complain. A supervisor came to his apartment, but the plaintiff denied the supervisor's offer of medical assistance. *Id.* at *4. Thereafter, the plaintiff registered himself at a hospital, where after an extensive examination he was diagnosed with a bruise on his head, and released. *Id.* Thereafter, the plaintiff filed his lawsuit, and alleged that various additional injuries resulted from the incident, including a double hernia, a herniated disc, a deviated septum, and damage to his hearing and eyesight. *Id.* at *22.

Applying the "shock the conscience" standard, the court in *Bove* granted summary judgment to the officers. Regarding plaintiff's documented injury – *i.e.,* the bruise – the court held that the injury was, as a matter of law, "*de minimis,* and insufficient to shock this Court's conscience." *Id.* at *21 (citing *Tierney,* 133 F.3d at 199). Regarding the additional alleged injuries, the court in *Bove* noted that they were:

> contradicted by the hospital's records and, more importantly, . . . unsupported by any evidence other than the plaintiff's assertions. Indeed, notably absent from the plaintiff's papers is any documentation as to his alleged injuries. There are no affidavits from the plaintiff's treating physicians or psychologists, no hospital records – in short, nothing to substantiate that the plaintiff's current ailments exist, let alone that the alleged 'beating' by the NYPD was the proximate cause of these injuries.

*Id.* at *22.

In the instant case, Carello claims that he was grabbed about the neck, pushed up against a wall, lifted to his feet, grabbed by the collar of his jacket, pulled out of the interview room, and then pushed out into the public lobby area of headquarters, where he stumbled but did not lose his balance. Rule 56.1 Statement at ¶¶30-32. But even assuming the truth of these allegations, Carello cannot establish that he suffered a specific injury that would demonstrate the use of force to a degree that would shock the conscience of this Court. Carello claims he suffered pain in the neck, back and head, but he never went to an emergency room or sought treatment from a medical doctor. *Id.* at ¶¶41-43.[3] There are, accordingly, no medical records from a hospital or doctor that could substantiate any of Carello's alleged injuries.

Carello also asserts psychological injury as a result of the incident, but he admitted that he did not seek treatment for any psychological symptoms until August 2007, over a year-and-a-half after the incident. Rule 56.1 Statement, at ¶¶45-46. Moreover, Carello admitted that his 2003 divorce -- which of course pre-dated the incident underlying this case -- was a contributing factor to his seeking psychological care. *Id.* at ¶48.

The only substantiated injury Carello could possibly point to as a result of the incident is the scratches on his neck which are visible in a photograph taken after the incident. Ex. F. But

---

[3] As noted, Carello claimed to have seen a chiropractor prior to the incident and could not recall when or how often he may have seen the chiropractor afterwards.

just as a bruise to the plaintiff's head was considered *de minimis* for Fourteenth Amendment purposes in the *Bove* case, Carello's scratches are insufficient, as a matter of law, to demonstrate the use of force in the instant case that would shock the conscience of this Court. In *Bove,* the plaintiff walked himself into a hospital for a full evaluation. In this case, Carello did not seek any medical treatment for the physical injuries he claims were caused by the incident.

In sum, even assuming the truth of Carello's allegations and deposition testimony, Carello cannot demonstrate that Lieutenant Rosenbergen violated Carello's rights under the Fourteenth Amendment. Lieutenant Rosenbergen is therefore entitled to qualified immunity from suit.

## POINT II
## THE CITY IS ENTITLED TO SUMMARY JUDGMENT

Municipal liability under Section 1983 may not be based on the doctrine of *respondeat superior*. *Monell v. Department of Soc. Services of the City of New York,* 436 U.S. 658, 690, 98 S. Ct. 2018 (1978). Instead, to maintain a Section 1983 action against a municipality, the plaintiff must establish (i) the existence of a municipal policy and (ii) that his injuries are caused by that policy. *Id.* The Second Circuit has made clear that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Riccuiti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991). Conclusory allegations of the existence of a municipal policy are insufficient to withstand a motion for summary judgment. *See Smith v. City of New York,* 290 F. Supp.2d 317, 322 (E.D.N.Y. 2003) (citing cases). In the instant case, Carello does not allege a municipal

1734806.1

policy nor did he contend in his deposition to have any information concerning same. Rule 56.1 Statement, at ¶52. Accordingly, there is no basis to assert a *Monell* claim against the City.

Moreover, the Second Circuit has held that, in the absence of an underlying constitutional violation, a claim for inadequate training or supervision against a municipality cannot stand. *Amato v. City of Saratoga Springs,* 170 F.3d 311, 320 (2d Cir. 1999); *Riccuiti,* 124 F.3d at 132. Because Carello cannot establish a violation of his Fourteenth Amendment rights, no liability can attach to the City of New Rochelle under such theories. *see also D'Angelo-Fenton v. The Town of Carmel,* 470 F. Supp.2d 387, 399 (S.D.N.Y. 2007).

Finally, since there is no basis for any of Carello's federal claims, the Court should dismiss Carello's supplemental state-law claims for lack of subject matter jurisdiction. 28 U.S.C. §1367(c)(3); *see Butler v. New York State Dept. of Law,* 998 F. Supp. 336, 346 (S.D.N.Y. 1998) (Brieant, J.).

### Conclusion

For the reasons set forth above, the Defendants' motion should be granted in its entirety.

Dated: White Plains, New York
       November 15, 2007

                WILSON, ELSER, MOSKOWITZ,
                EDELMAN & DICKER LLP
                Attorneys for the Defendants

                By: Lalit K. Loomba (LL-9755)

                3 Gannett Drive
                White Plains, NY  10604
                (914) 323-7000
                File No. 07367.00062