MCKENA MCGOWAN LLP
Attorneys for Plaintiff
111 Church Street
White Plains, New York 10601
(914) 686-0500
Attn:   Matthew J. McGowan (MM-9198)
        Daniel J. McKenna (DM-6326)

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOHN J. CARELLO,

                                                        07 Civ. 2914
                   Plaintiff,                           (CLB)(MDF)

        -against-

THE CITY OF NEW ROCHELLE, THE NEW ROCHELLE
POLICE DEPARTMENT, P.O. GEORGE ROSENBERGEN,
AND P.O. JOHN/JANE DOES

                   Defendants.
------------------------------------------------------------------------x


# MEMORANDUM OF LAW
# IN OPPOSITION TO
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


By:   Matthew J. McGowan, Esq.
      Partner

# **Table of Contents**

PRELIMINARY STATEMENT ........................................................................................ 3

FACTUAL AND PROCEDURAL BACKGROUND........................................................ 3

ARGUMENT ..................................................................................................................... 5

    I. ROSENBERGEN IS NOT ENTITLE TO QUALIFIED IMMUNITY ...................... 5

    A. The Qualified Immunity Standard ............................................................................ 6

        1. Rosenbergen Violated Mr. Carello's Clearly Established Constitutional Rights Protected Under the Fourteenth Amendment ............................................................. 7

        2. It Was Not Objectively Reasonable For Rosenbergen To Believe His Conduct Did Not Violate Clearly Established Constitutional Rights Afforded To Mr. Carello.... 12

    II. THE CITY OF NEW ROCHELLE IS NOT ENTITLED TO SUMMARY JUDGMENT SINCE THE CONDUCT OF ROSENBERGEN VIOLATED MR. CARELLO'S RIGHTS UNDER THE FOURTEENTH AMENDMENT .................... 13

CONCLUSION................................................................................................................ 13

**PRELIMINARY STATEMENT**

Plaintiff, John J. Carello ("Mr. Carello"), respectfully submits this Memorandum of Law in opposition to the motion for summary judgment of the defendants, City of New Rochelle ("City") and Lieutenant George Rosenbergen ("Rosenbergen").

Rosenbergen is not entitled to qualified immunity as his actions in assaulting Mr. Carello violate the Fourteenth Amendment rights of Mr. Carello. Specifically, there was no need for the use of any force in this non-custodial, non-arrest situation; and therefore, the use of any force against Mr. Carello in and of itself shocks the conscience.

Inasmuch as Rosenbergen's conduct has violated the constitutional rights of Mr. Carello, the City is liable for Rosenbergen's actions and the City is therefore not entitled to summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The factual and procedural histories of this action are set forth in the Defendants' Statement of Undisputed Facts submitted pursuant to Local Rule 56.1, as well as in Plaintiff's Statement of Undisputed Facts submitted pursuant to Local Rule 56.1.

For the sake of convenience, the following pertinent facts are deemed true for purposes of the defendants' qualified immunity motion and all inferences are to be drawn in the light most favorable to the plaintiff. *Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir., 1995). Any assertions of fact to the contrary by Rosenbergen, which there are none, are not to be considered by this court in deciding this motion. *Torres v. Village of Sleepy Hollow*, 379 F.Supp 478 at 483 (SDNY, 2005).

The undisputed facts are that Mr. Carello entered the headquarters of the New Rochelle Police Department to file a civilian complaint against an officer, Defendants Rule 56.1 Statement at ¶ 19.  During his initial interview with Rosenbergen, his complaint was summarily dismissed by Rosenbergen as Rosenbergen told Mr. Carello he was not harassed, Defendants Rule 56.1 Statement at ¶ 22.  Mr. Carello then asked Rosenbergen if he could speak with a supervisor, Defendants Rule 56.1 Statement at ¶ 23.  Rosenbergen tried to discourage Mr. Carello even further stating that Mr. Carello would have to wait a long time to speak with a supervisor, Defendants' Exhibit D, p. 51, ll. 16-20.

After waiting a lengthy period of time to speak with a supervisor, during which he was required to call the police head from the lobby, Mr. Carello was again met by Rosenbergen, Defendants Rule 56.1 Statement at ¶ 24-26.  Mr. Carello was taken by Rosenbergen into a secluded interview room, Defendants Rule 56.1 Statement at ¶ 26.  Rosenbergen continued to state that Mr. Carello was not harassed, Defendants' Exhibit D, p. 59, ll. 11-17.

While telling his story for a second time to Rosenbergen, Mr. Carello inquired as to why no uniformed police officer responded to his 911 call for assistance during the underlying traffic stop by an unmarked patrol car, Defendants' Exhibit D, p. 60, ll. 3-15.  At that time, Mr. Carello admittedly pointed his finger towards North Avenue referencing the traffic stop, Defendants' Exhibit D, p. 60, ll. 11-15.  Rosenbergen yelled at Mr. Carello to stop pointing his finger and then assaulted Mr. Carello by grabbing Mr. Carello by his throat with enough force to lift him out of his chair, pinned him against the wall

4

and then threw him out of the room and into the lobby, Defendants Exhibit D, p. 60, ll. 25, p. 61, ll. 1-6; p. 62, ll. 16-22.

As a result of the foregoing, Mr. Carello sustained *inter alia* abrasions and scratches to the left side of his neck, Defendants' Exhibit F.

## ARGUMENT

### I. ROSENBERGEN IS NOT ENTITLED TO QUALIFIED IMMUNITY

Rosenbergen has argued that he is entitled to qualified immunity from suit solely on the ground that the injuries sustained by Mr. Carello are *de minimis*. However, Rosenbergen's argument fails to properly address all of the elements of the "shock the conscience" standard as set forth in *Johnson v. Glick*, to wit: "a court must look to such factors as [1] the need for the application of force, [2] the relationship between the need and the amount of force used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or mailiciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028 at 1033 (2d Cir., 1973).

As will be demonstrated below, the use of force was unnecessary under the circumstances of this case. Consequently, any amount of force used was necessarily excessive in relation to the "need for the application of force." Moreover, where there is no need for the use of force, the existence of a resultant injury of any degree further suggests that the force used was excessive. Under the circumstances of this case, it cannot be said that the force was used to restore discipline as discipline was not lacking.

A.  <u>The Qualified Immunity Standard</u>

It is well settled that the Doctrine of Qualified Immunity shields "government officials performing discretionary functions … from liability for civil damages…" as a result of those actions.  *Harlow v. Fitzgerald, 457 U.S. 800 (1982)*.  In the context of this action, "a police officer is qualifiedly immune from suit if (1) his conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for the officer to believe his conduct did not violate clearly established constitutional rights." *Bolden v. Village of Monticello*, 344 F.Supp.2d 407 (SDNY, 2004).

As noted, the inquiry is a two step process.  The court must first determine whether the facts give rise to the violation of a constitutional right.  *Torres v. Village of sleepy Hollow*, 379 F.Supp 478 at 483 (SDNY, 2005).   Since the qualified immunity motion is generally a pre-discovery motion, the court must accept the plaintiff's version of the events as true and the contradictory assertions of the defendant officer are to be disregarded.  *Id.*  As demonstrated below, Rosenbergen's conduct violated the Fourteenth Amendment rights of Mr. Carello.

Next, the court must determine "whether a reasonable official in defendant's position (as that position is described by plaintiff) ought to have known that he was violating plaintiff's constitutional rights by doing what plaintiff alleges he did." *Id.*  In this regard, the inquiry is whether the law is well settled.  *Id.*  Here, Mr. Carello's Fourteenth Amendment substantive due process right to be free from excessive force is well settled, and therefore, the qualified immunity defense should be denied.  *Hemphill v. Schott*, 141 F.3d 412 (2d Cir., 1998).

6

1. Rosenbergen Violated Mr. Carello's Clearly Established Constitutional Rights Protected Under the Fourteenth Amendment

Mr. Carello was present in the headquarters of the New Rochelle Police Department solely for the purpose of filing a civilian complaint against a police officer. By using any amount of force upon Mr. Carello Rosenbergen violated Mr. Carello's clearly establishes rights secured by the Fourteenth Amendment of the Constitution of the United States. *Hemphill v. Schott*, 141 F.3d 412 (2d Cir., 1998) ("outside the context of an arrest, a plaintiff may make claims of excessive force under §1983 under the Due Process Clause of the Fourteenth Amendment"). As the court[1] so eloquently stated, "the substantive due process right to be free from excessive force is alive and well." *Id.* at 418, citing *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir., 1995).

In analyzing Mr. Carello's claim of excessive force under §1983 under the Due Process Clause of the Fourteenth Amendment, the court must determine whether the conduct of Rosenbergen "shocked the conscience". *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir., 1995). In determining whether Rosenbergen's conduct shocks the conscience the "court must look to such factors as [1] the need for the application of force, [2] the relationship between the need and the amount of force used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or mailiciously and sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028 at 1033 (2d Cir., 1973).

Under this approach, the extent of injury suffered is one factor that may suggest whether the use of force was necessary or evidenced the malicious and sadistic character

---

[1] The *Hemphill* decision was rendered by Circuit Judges Oakes and Walker with District Judge Charles L. Brieant sitting by designation.

of the official's conduct. *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)[2]. The Court in *Hudson,* applying the *Whitley* approach to an Eighth amendment claim, stressed that it is also proper to evaluate "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials and any efforts made to temper the severity of a forceful response." *Id.* at 7. The Court aptly stated that "[t]he absence of serious injury is therefore relevant to the … inquiry, but it does not end it." *Id.*

The Court's decision in *Hudson* is particularly instructive here as it addresses the identical standard applicable to Mr. Carello's Fourteenth Amendment claim of excessive force. Moreover, the answer to the first prong, whether there was a need for the use of force, should end the Court's inquiry. There was no need to use any force against Mr. Carello and thus, in doing so, Rosenberger used excessive force against Mr. Carello in violation of Mr. Carello's rights secured by the Fourteenth Amendment.

The undisputed facts are that Mr. Carello entered the headquarters of the Rochelle Police Department to file a civilian complaint against an officer, Defendants Rule 56.1 Statement at ¶ 19. During his initial interview with Rosenbergen, his complaint was summarily dismissed by Rosenbergen as Rosenbergen told Mr. Carello he was not harassed, Defendants Rule 56.1 Statement at ¶ 22. Mr. Carello then asked Rosenbergen if he could speak with a supervisor, Defendants Rule 56.1 Statement at ¶ 23. Rosenbergen tried to discourage Mr. Carello even further stating that Mr. Carello would

---

[2] In *Hudson*, the Court cited to its decision in *Whitley v. Albers*, 475 U.S. 312 (1986), where the Court addressed the standard applicable to an Eighth Amendment excessive force claim of an inmate shot during a prison riot and where the Court held the standard to be "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm", the standard set forth in *Johnson* and applicable to the instant matter.

have to wait a long time to speak with a supervisor, Defendants' Exhibit D, p. 51, ll. 16-20.

After waiting a lengthy period of time to speak with a supervisor, during which he was required to call the police headquarters from the lobby, Mr. Carello was again met by Rosenbergen, Defendants Rule 56.1 Statement at ¶ 24-26.  Mr. Carello was taken by Rosenbergen into a secluded interview room, Defendants Rule 56.1 Statement at ¶ 26. Rosenbergen continued to state that Mr. Carello was not harassed, Defendants' Exhibit D, p. 59, ll. 11-17.

While telling his story for a second time to Rosenbergen, Mr. Carello inquired as to why no uniformed police officer responded to his 911 call for assistance during the underlying traffic stop by an unmarked patrol car, Defendants' Exhibit D, p. 60, ll. 3-15. At that time, Mr. Carello admittedly pointed his finger towards North Avenue referencing the traffic stop, Defendants' Exhibit D, p. 60, ll. 11-15.  Rosenbergen yelled at Mr. Carello to stop pointing his finger and then assaulted Mr. Carello by grabbing Mr. Carello by his throat with enough force to lift him out of his chair, pinned him against the wall and then threw him out of the room and into the lobby, Defendants Exhibit D, p. 60, ll. 25, p. 61, ll. 1-6; p. 62, ll. 16-22.

As a result of the foregoing, Mr. Carello sustained *inter alia* abrasions and scratches to the left side of his neck, Defendants' Exhibit F.

Based upon the foregoing, it is abundantly clear that the use of force in and of itself was wholly unnecessary.  This was not an instance where Rosenbergen was forced to make a decision "in haste, under pressure" to maintain or restore discipline.  *Hudson*, 503 U.S. at 6.  Mr. Carello was not an inmate in a riot, an arrestee resisting, or even a

suspect in custody; he was merely attempting to file a complaint of harassment against a police officer.

Inasmuch as the use of force was unnecessary, the use of any force, in this case an amount sufficient to lift Mr. Carello (then approximately 225 lbs) from a seated position in a chair and to pin him against a wall, must also be deemed excessive; especially in light of the lack of any threat that could have been reasonably perceived by Rosenbergen at the time and the apparent lack of any effort on Rosenbergen's part to temper the severity of his forceful response to Mr. Carello's request to file a civilian complaint. See *Hudson*, supra.

The use of any force against a civilian by a member of law enforcement in response to a request by that civilian to file a complaint against another member of law enforcement does not only "shock the conscience", but it is also the *raison d'etre* for 42 U.S.C. §1983, regardless of the amount of any physical injury caused. Moreover, to hold to the contrary and require a serious injury threshold will have a chilling effect upon all future claims and complaints for violation of one's civil rights by members of law enforcement as it will create a license for law enforcement to physically discourage such complaints provided that no serious injury is caused.

In this regard, the defendant's reliance upon *Tierney v. Davidson,* 133 F.3d 189 (2d Cir., 1998), *Bove v. New York City*, 1999 WL 595620 (SDNY, 1999), and *Cunningham v. Rodriguez*, 2002 WL 31654960 (SDNY, 2002), is misplaced. In *Tierney*, the police were responding to a domestic violence call and were actually engaged by the plaintiffs in a physical altercation where the use of some force was necessary to restore discipline. *Tierney*, 133 F.3d at 193.

Here, Rosenbergen's encounter with Mr. Carello was not in response to an emergent circumstance; and therefore, no force was necessary. Accordingly, the use of any force is enough to shock the conscience regardless of the amount of physical injury caused.

In *Bove*, upon which Rosenbergen principally relies, the police were again responding to a complaint concerning a domestic dispute involving the plaintiff and a neighbor. *Bove*, 1999 WL 595620 at 1. In dismissing the complaint, the court noted that the use of force – i.e. whether force had been used, was in dispute, as well as whether the use of force was excessive, and in *Bove* the plaintiff's alleged injuries were "completely contradicted by the hospital's records and … unsupported by any evidence other than the plaintiff's assertions." *Id.* at 6.

The facts of this case are also distinguishable from *Cunningham v. Rodriguez*, where the plaintiff/pretrial detainee began shouting obscenities at the sitting judge and refused to listen to the officers' requests for him to leave the courtroom. *Cunningham*, 2002 WL 31654960 at 1. In that case, the court found that the defendant officer was authorized to use force to prevent disorder in the courtroom, such as was being caused by the plaintiff, and that given the finding that plaintiff had "no injuries or complaints", the force used was *de minimis. Id.* at 5.

Here, unlike *Cunningham, Bove* and *Tierney*, the use of force was not permitted or necessary to maintain order. Thus, the amount of force used cannot be said to be *de minimis* as the use of any force was itself excessive. It is that use of force alone which shocks the conscience and gives rise to a constitutional tort for which Rosenbergen is liable and not entitle to qualified immunity.

    2. **It Was Not Objectively Reasonable For Rosenbergen To Believe His Conduct Did Not Violate Clearly Established Constitutional Rights Afforded To Mr. Carello**

Defendant has not argued that his conduct was reasonable or that he believed, whether reasonably or not, that his actions did not violate the established constitutional rights of Mr. Carello under the Fourteenth Amendment. As such, defendant has conceded the point.

Defendant's sole argument is that Mr. Carello did not sustain an injury that was serious enough to merit protection of his constitutional rights. The logic of the defendant's argument, should it prevail, can serve no purpose other than to erase over a century's worth of civil rights laws and decisions, and to send tremors throughout the Constitution itself.

This point is buttressed by the fact that, upon returning to the New Rochelle Police Department, Mr. Carello was ultimately met by Lt. Masseo who did indeed take the civilian complaint, without assaulting Mr. Carello or even laying a hand upon him. It is also noted that Rosenbergen navigated his first interview with Mr. Carello without assaulting him as well.

Moreover, as set forth above, there was no threat to Rosenbergen's safety or disorder caused by Mr. Carello's request to file a complaint such as might warrant further scrutiny of Rosenbergen's actions (as in the typical civil rights cases involving an officer's conduct during an arrest or custodial setting). Simply put, it could not have been reasonable for Rosenbergen to believe that his conduct did not violate Mr. Carello's constitutional rights since Mr. Carello was merely trying to file a civilian complaint and was seated in a chair at the time of the assault by Rosenbergen. In fact, it was

Rosenbergen's refusal to record the complaint during the first interview that brought about the second interview during which he assaulted Mr. Carello.

### II. THE CITY OF NEW ROCHELLE IS NOT ENTITLED TO SUMMARY JUDGMENT SINCE THE CONDUCT OF ROSENBERGEN VIOLATED MR. CARELLO'S RIGHTS UNDER THE FOURTEENTH AMENDMENT

The claims against the City are premised upon negligent hiring and retention and negligent training and supervision of defendant, Rosenbergen. While it is settled law that such claims against municipal defendants cannot stand without a constitutional or civil rights violation, *City of Los Angeles v. Heller,* 475 U.S. 796 (1986), here, as set forth above, Rosenbergen's actions violated the constitutional rights of Mr. Carello under the Fourteenth Amendment. Accordingly, defendant, City, is not entitled to summary judgment.

### CONCLUSION

Based upon the foregoing, it is respectfully submitted that defendant's application should be denied in its entirety.

Dated: White Plains, New York
       December 17, 2007

                                            Matthew J. McGowan