WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for the Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn: Peter A. Meisels (PM-5018)
      Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x
JOHN CARELLO,                                                             :
                                                                          :      07 Civ. 2914 (CS)
                         Plaintiff,                                       :
                                                                          :
        -against-                                                         :
                                                                          :
THE CITY OF NEW ROCHELLE, THE NEW ROCHELLE                                :
POLICE DEPARTMENT, P.O. GEORGE ROSENBERGEN,                               :
AND P.O. JOHN/JANE DOES,                                                  :
                                                                          :
                         Defendants.                                      :
------------------------------------------------------------------------- x

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannet Drive
White Plains, NY 10604
(914) 323-7000

2516568.1

## Introduction

Defendants the City of New Rochelle (the "City") and Lieutenant George Rosenbergen ("Rosenbergen") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment dismissing plaintiff's claim for unlawful seizure under the Fourth Amendment.

## Preliminary Statement

> This is an action under Section 1983 and although the complaint mentions the First, Fourth, Fifth, Eighth and Fourteenth Amendments, I think we all agree and I think [plaintiff's attorney] even said that it's really a Fourteenth Amendment case.[1]

This case involves an incident between Plaintiff John Carello ("Carello") and then Sergeant Rosenbergen. Carello claims that he was trying to make a civilian complaint against a New Rochelle Police Officer when he was physically removed from police headquarters by Rosenbergen. Carello was never under arrest, nor under the undisputed circumstances could a reasonable person have believed that he was not free to leave. Indeed, Carello's own claim is that he was forced *away* from police headquarters, not being held there against his will. As this Court already recognized, and as Carello's attorney had earlier agreed, Carello's non-custodial claim of excessive force must be analyzed under the Fourteenth Amendment. Nevertheless, Carello has now refused to withdraw his Fourth Amendment claim, thus necessitating the instant motion. For the reasons set forth below, Carello's claim under the Fourth Amendment must be dismissed.

## Pertinent Facts and Procedural History

The facts and procedural history pertinent to the instant motion are set forth in the accompanying statement pursuant to Local Rule 56.1 ("Rule 56.1 Statement"), to which the

---

[1] From the decision and order read into the record by the Court (Seibel, J.) on January 7, 2009.

2516568.1

Court is respectfully referred. All exhibits referenced herein are annexed to the accompanying declaration of Lalit K. Loomba, Esq.

A.  Facts

This case concerns an incident between Carello and then Sergeant George Rosenbergen which took place on January 11, 2006. Rule 56.1 Statement, at ¶4. About an hour prior to the incident, Carello was issued traffic tickets by a different New Rochelle Police Officer. *Id.* at ¶5. Carello drove directly to New Rochelle police headquarters with the intention of making a civilian complaint against the officer who had issued the tickets. *Id.* at ¶8.

When Carello arrived at police headquarters, he initially spoke with Lieutenant Rosenbergen through the window in the public lobby. Rule 56.1 Statement, at ¶12. Carello told Rosenbergen that he had been harassed by a police officer. *Id.* When Rosenbergen asked what he meant by "harassed," Carello said that the police officer had given him traffic tickets which he did not feel were justified. *Id.* at ¶13. When Rosenbergen asked Carello if there was anything more to the "harassment," Carello responded by demanding that Rosenbergen just give him a complaint form, and by telling Rosenbergen that he did not want to talk about it with him. *Id.* at ¶14.

At this point other civilians were waiting at the public window, and Rosenbergen asked Carello to step into a nearby interview room. Rule 56.1 Statement, at ¶15. The interview room is located within a secure (*i.e.,* non-public) area of police headquarters. *Id.* at ¶16. To get to the room, Lt. Rosenbergen opened a door just to the right of the public window and allowed Carello to enter. *Id.* Carello went with Rosenbergen into the interview room, where he continued to complain about being issued traffic tickets. *Id.* at ¶17. In addition, Carello added a second complaint, which was that he had called 911 for police assistance while the officer was issuing

the tickets, and the 911 operator was rude and no one responded to the scene. *Id.*

Under the Section 2.3 of Article 6.01 of the NRPD Manual of Procedure, a supervisor, such as a Sergeant, is required to make an initial assessment of a civilian complaint against a police officer to determine whether the complaint is a valid allegation of "misconduct," as opposed to a lack of understanding on the complainant's part of police procedure or existing laws. Rule 56.1 Statement, at ¶10; Ex. C.

Rosenbergen explained to Carello that his complaint that the police officer had issued traffic tickets which Carello felt were unjustified should be addressed to the New Rochelle City Court where he could challenge the tickets. He told Carello that his complaint about the 911 operator should be addressed to the New York State Police, because 911 calls are handled initially by the New York State Police. Rule 56.1 Statement, at ¶18. Carello responded by telling Rosenbergen that he was supposed to do what Carello told him to do. *Id.* at ¶19. Carello then demanded to see the New Rochelle Police Commissioner. *Id.* at ¶20.

Rosenbergen explained that if Carello wished to see the Commissioner he would have to make an appointment with the Commissioner's secretary. Rule 56.1 Statement, at ¶20. He then told Carello that he had to leave the interview room, and suggested that he could wait in the public lobby area if he wanted to do so. *Id.* at ¶21. Carello left the interview room and walked out to the lobby without incident. *Id.*

Several minutes later, Rosenbergen was advised that Carello was making 911 calls from the lobby of police headquarters. Rule 56.1 Statement, at ¶22. Rosenbergen approached Carello in the lobby and asked why he was calling 911, in response to which Carello told Rosenbergen that he wanted to see the Police Commissioner immediately. *Id.* at ¶23. Rosenbergen explained that 911 should only be used in case of emergencies. *Id.* Rosenbergen then went to confer with

his supervisors concerning Carello's complaint. *Id.* at ¶24.

After a few minutes, Carello was becoming disruptive and starting to make a scene in the public lobby. Rule 56.1 Statement, at ¶25. Rosenbergen entered the lobby again and requested that Carello meet him in the interior interview room. *Id.* Once inside the interview room, Rosenbergen told Carello that he had spoken with supervisors who had concurred in his view that Carello was not making an allegation of police "misconduct" of the type necessary to form the basis of a civilian complaint against an officer. *Id.* at ¶26. Again, Rosenbergen explained that Carello should address the complaint about the traffic tickets to the City Court, and the complaint about the 911 operator to the New York State Police. *Id.*

At this point, Carello became angry and confrontational, and again demanded that he be allowed to see the Police Commissioner. Rule 56.1 Statement, at ¶27. In a further effort to explain the procedure, Rosenbergen showed Carello Section 2.3 from Article 6.1 of the NRPD Manual of Procedure, which details procedures for civilian complaints. *Id.* at ¶28. Carello read the section, *id.* at ¶29, which provides as follows:

> The supervisor who initially receives the complaint should evaluate whether or not the complaint is a valid allegation of *misconduct* on the part of an employee or merely a lack of understanding on the complainant's part of police procedure or existing laws. When the complaint is based on a lack of understanding of policies, procedures or existing laws, the supervisor handling the complaint should give the complainant a thorough explanation of such policies, procedure or laws in order [to] clarify the reason for the conduct which initiated the complaint.

Ex. C, at §2.3 (emphasis added).

After reviewing the provision, Carello asked Rosenbergen what was meant by "misconduct." Rule 56.1 Statement, at ¶30. Rosenbergen told Carello that misconduct could be "discourtesy, [or] if someone was rude to you, cursed at you; it could be false arrest; police

excessive force; could be someone threatening you." *Id.* at ¶31. Carello then claimed that the officer who had issued traffic tickets had also threatened him. *Id.* at ¶32. But Carello had not mentioned being, or feeling, threatened by the officer until *after* Rosenbergen listed threatening behavior as an example of "misconduct" for purposes of Manual of Procedure. *Id.* at ¶33.

After Rosenbergen pointed this out, Carello became extremely angry. Rule 56.1 Statement, at ¶34. His face became red, he raised his voice, stood up and pointed at Rosenbergen's face, demanding that he accept Carello's complaint against the police officer. *Id.* Rosenbergen stood up, told Carello to stop pointing at him and that he (Carello) needed to leave the room because now he (Carello) was threatening him. *Id.* at ¶35. Carello then sat back down and announced that he was not going to leave the room until he saw the Police Commissioner. *Id.* at ¶36.

Rosenbergen told Carello that the interview room was not a public area of police headquarters, that he could not stay there, and that if he refused to leave he would be removed. Rule 56.1 Statement, at ¶37. Carello repeated that he was not leaving. *Id.* at ¶38. Rosenbergen then took hold of Carello's wrist and jacket, stood him up and accompanied Carello out of the interview room into the public lobby. *Id.* at ¶39. There is a disputed issue of fact as to the degree of force Rosenbergen used in escorting Carello from the interview room. However, it is undisputed that Rosenbergen did not physically touch Carello until he was in the process of removing Carello from the room. *Id.*

B.  Procedural History

Carello filed a notice of claim on April 6, 2006. Ex. D. He commenced the instant action by filing a summons and complaint on April 11, 2007. Ex. E. Defendants filed their answer on June 29, 2007. Ex. F. On November 15, 2007, defendants filed a motion for summary judgment

arguing, *inter alia,* that Rosenbergen was entitled to qualified immunity. *See* Docket #s 12-15. On January 7, 2009, the Court (Seibel, J.) issued a decision from the bench denying the motion. Ex. G.

In its ruling, the Court stated: "This is an action under Section 1983 and although the complaint mentions the First, *Fourth,* Fifth, Eighth and Fourteenth Amendments, I think we all agree and I think that Mr. McKenna [plaintiff's attorney] even said that *it's really a Fourteenth Amendment case.*" *Id.,* at p. 7 (emphasis added). Notably, Carello's attorney, Mr. McKenna, did not object to the Court's characterization of the case, nor did he deny that he himself had characterized the case as a Fourteenth Amendment case. In fact, following the decision, Mr. McKenna's only words were: "that works for us," and "thank you very much." Ex. G, at 16.

By letter dated September 2, 2009 (Ex. H), and at the conference held before the Court on September 4, 2009, Carello, by counsel, withdrew all claims against the defendants, including the *Monell* claim against the City, with the following exceptions: (i) a common-law claim for assault and battery; (ii) a Section 1983 claim for excessive force in violation of the Fourteenth Amendment; and (iii) a Section 1983 claim for unlawful seizure in violation of the Fourth Amendment. Rule 56.1 Statement, at ¶48. The instant motion is directed at the claim for unlawful seizure under the Fourth Amendment.

## Argument

### POINT I

### CARELLO WAS NOT "SEIZED" FOR PURPOSES OF THE FOURTH AMENDMENT

The United States Supreme Court has given a "clear direction that any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account *all of the circumstances* surrounding the incident in each individual case." *Michigan v. Chesternut,* 486 U.S. 567, 572 (1988) (emphasis added) (internal quotes omitted). The Supreme Court has stated that a seizure occurs when, considering the totality of the circumstances, "a reasonable person would believe that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980); *see United States v. Montilla,* 928 F.2d 583, 587 (2d Cir. 1991). In *United States v. Moreno,* 897 F.2d 26, 30 (2d Cir. 1990), the Second Circuit stated that a seizure occurs when the police detain a person and thereby restrain that person's "right to walk away."

In the instant case, Lieutenant Rosenbergen was not attempting to question Carello about Carello's possible involvement in criminal activity, nor was he in the process of arresting Carello for a crime. To the contrary, Carello voluntarily entered police headquarters with the intention of filing a civilian complaint against a separate officer who had earlier issued him traffic tickets. Carello was in a non-public and secure area of police headquarters and was ordered to leave by Lieutenant Rosenbergen. Rule 56.1 Statement, at ¶35. Carello refused that order, sat down and announced, in effect, that he was not going anywhere. *Id.* at ¶36. At this point, Rosenbergen took hold of Carello's wrist and jacket and escorted him outside of the non-public area of police headquarters. *Id.* at ¶39. From the context of the interaction between Rosenbergen and Carello it is undisputed that Rosenbergen wanted Carello to leave the room. He was not, by force or otherwise, detaining Carello against his will. A seizure under the Fourth Amendment therefore

did not occur.

The Defendants were unable find a case where a person told to leave a secure area of a police headquarters later claimed to have been "seized" for purposes of the Fourth Amendment. The District Court from the United States District for the Eastern District of Michigan, however, recently held that there was no Fourth Amendment seizure when workers were forced to leave their place of employment for six hours while officers executed a warrant. *Streater v. Cox*, 2008 U.S. Dist. LEXIS 14907 (E.D. Mich. Feb. 28, 2008). The court held that the plaintiffs "were not 'seized' in any way [because] they were, in fact, allowed to leave the work premises while a search was conducted." *Id.* at *6. In both *Streater* and the instant case, the plaintiffs were obviously not restrained by the police, and hence no seizure occurred.[2]

Carello's argument appears to be that because Rosenbergen touched him while in the process of removing him from the interview room, Carello was "seized" under the Fourth Amendment, even if only for the few seconds it took Rosenbergen to remove Carello from the room. The flaw in this argument is that it utterly disregards the surrounding circumstances. If Rosenbergen was attempting to hold Carello in the interview and grabbed him and forced him into a chair, a seizure may well have occurred. But that did not happen. Rather, it is undisputed that Rosenbergen was attempting to remove Carello from the room. Rule 56.1 Statement, at ¶40. That Rosenbergen touched Carello during the process of removing him from the room might raise a fact issue as to whether excessive force was used, but the physical contact between them does not turn the incident into a seizure under the Fourth Amendment.

---

[2] *Streater*, of course, is distinguishable in the sense that the plaintiffs had an interest in being at their place of employment, while in the instant case, Carello did not have any right to stay within a non-public area of New Rochelle police headquarters. But that distinction only makes Carello's claim that he was seized under the Fourth Amendment that much less plausible.

2516568.1

## Conclusion

For the reasons set forth above, Carello's claim under the Fourth Amendment should be dismissed as a matter of law with prejudice. In addition, Carello should be ordered to reimburse the attorney's fees and disbursements incurred in making this motion.

Dated: White Plains, New York
September 30, 2009

                         Respectfully submitted,

                         WILSON, ELSER, MOSKOWITZ,
                         EDELMAN & DICKER LLP
                         Attorneys for the Defendants

                         By: Lalit K. Loomba (LL-9755)

                         3 Gannett Drive
                         White Plains, NY  10604
                         (914) 323-7000
                         File No. 07367.00062

- 9 -

2516568.1