UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN CARELLO,                                               07 Civ. 2914 (CS)

                    Plaintiff,

               -against-                                **PROPOSED**
                                                           **FINDINGS OF FACT AND**
                                                           **CONCLUSIONS OF LAW**

THE CITY OF NEW ROCHELLE, THE NEW
ROCHELLE POLICE DEPARTMENT, P.O. GEORGE
ROSENBERGEN and P.O. JOHN/JANE DOES,

                    Defendants.
-------------------------------------------------------------------X

       Defendants CITY OF NEW ROCHELLE and GEORGE ROSENBERGEN hereby

submit the following proposed findings of fact and conclusions of law in advance of trial:

**FINDINGS OF FACT**

**A.  THE TRAFFIC STOP**

       On the afternoon of January 11, 2006, Officer Kenneth Hudson of the New Rochelle City

Police Department ("NRPD") was situated in his police vehicle at the intersection of North

Avenue and Paine Avenue, working routine traffic patrol using a radar gun.  Plaintiff sped past

Officer Hudson's vehicle at 51 miles per hour in a 30 mile per hour zone.  Officer Hudson put on

his vehicle's emergency lights and directed plaintiff to pull his car over to the side of the road in

front of a McDonald's restaurant at 720 North Avenue.  Officer Hudson was in full NRPD police

uniform, including a prominently displayed shield, name tag, and NRPD badges.  Officer

Hudson then advised plaintiff that he was speeding and was not wearing his seatbelt.  He asked

plaintiff for his license and registration.

       Officer Hudson returned to his vehicle and wrote plaintiff a summons for speeding but

decided at that time to forgive the seatbelt violation.  Officer Hudson returned to plaintiff's

1

vehicle and handed him the summons for speeding, at which time plaintiff began a tirade, shouting and cursing about receiving a summons, words to the effect of: "I can't believe this shit!" "No fucking warnings!" and "No courtesies!"  Officer Hudson advised plaintiff that he was entitled to plead "not guilty" if he felt the ticket was incorrect.

As Officer Hudson was walking back to his vehicle, plaintiff stuck his middle finger in the air, directing the gesture at Officer Hudson approximately five times, a gesture known to symbolize the phrase "Fuck you."  In full view of Officer Hudson, plaintiff then unsafely pulled his car into traffic without using his directional signal as required by law.

Officer Hudson again directed plaintiff to pull his vehicle over to the curb, exited his vehicle and asked plaintiff to provide his license and registration. Plaintiff initially refused to give Officer Hudson his license, stating, "I'll see you at your headquarters!"  Eventually, plaintiff provided his license and Officer Hudson advised plaintiff that he was going to write plaintiff summonses for failing to signal and for the seatbelt violation.

When Officer Hudson returned to his vehicle, plaintiff called 911, an emergency telephone number manned by the New York State Police and complained that he was being harassed.  The State Police contacted NRPD, which sent another police officer to the scene.

Plaintiff subsequently pled guilty to the speeding and failing to signal violations in satisfaction of the seatbelt violation.


### B.  APPEARANCE AT HEADQUARTERS

Plaintiff then drove directly to NRPD headquarters to complain about Officer Hudson. Then-Sergeant (now Lieutenant) George Rosenbergen was in the radio room of the station when

he was informed that someone was at the front desk seeking to file a complaint against an officer.

Pursuant to the NRPD Manual of Procedure, Article 6.01, § 2.3, a supervisor is required to make an initial assessment of civilian complaints against police officers to determine whether the complaint is a valid allegation of "misconduct," as opposed to a lack of understanding on the complainant's part of police procedure or existing laws.

Sgt. Rosenbergen spoke with plaintiff through the glass partition at the front desk. Plaintiff stated that he was given traffic tickets that he felt were unjustified and that he was treated rudely by the 911 dispatcher.  Sgt. Rosenbergen asked if there was anything more to his alleged harassment, including whether he knew the officer personally, whether he had prior contact with the officer, or any other reasons why he might claim to have been harassed. Plaintiff responded by demanding that Sgt. Rosenbergen give him a complaint form, stating that he did not want to talk to Sgt. Rosenbergen about the issue.  Sgt. Rosenbergen told plaintiff that his complaint did not sound like harassment, as it is a police officer's job to write tickets for traffic infractions.

Plaintiff became loud and agitated, and it was difficult to communicate with through the glass.  As other citizens were coming to the window for police business, Rosenbergen asked plaintiff to accompany him into a small interview room.

### C.  PLAINTIFF'S FIRST INTERVIEW

Sgt. Rosenbergen let plaintiff into the secure area of the police station, through a door from the lobby.  The interview room is a very small space, with a small desk and two or three

chairs.  It is in a non-public area of the police station, with access to the control room, cell block, and other sensitive and secure areas.

Once in the interview room, Rosenbergen informed plaintiff that his complaint regarding his treatment by the 911 dispatcher was more properly addressed towards the State Police, as the State Police actually receives 911 calls, not NRPD.  Sgt. Rosenbergen told plaintiff that the Manual of Procedure does not allow NRPD to address complaints against officers in other jurisdictions.  Sgt. Rosenbergen explained that if plaintiff felt the traffic tickets were unjustified, he should plead "not guilty" and challenge the tickets in the New Rochelle City Court.

Plaintiff disagreed, and stated in sum and substance that plaintiff was a citizen, Sgt. Rosenbergen should do what he told him to do, and that Sgt. Rosenbergen should take plaintiff's complaint and talk to the State Police himself.  Plaintiff demanded to speak with the Police Commissioner.  Sgt. Rosenbergen explained that the Police Commissioner generally does not directly handle civilian complaints, but he was free to contact the Commissioner's secretary to make an appointment if he so desired.

When it became apparent that plaintiff would not accept his answers, Sgt. Rosenbergen ended the interview.  Plaintiff was reluctant to leave until Sgt. Rosenbergen told him that he could wait in the lobby if he wished, but that he could not wait in the interview room, which was in a secure area.  Plaintiff left the interview room and Sgt. Rosenbergen returned into the radio room of the police station.  While plaintiff was waiting in the lobby of the police station, he called the police station several times to remind them that he was waiting, even though he was sitting in the lobby in front of the police reception desk.

Sgt. Rosenbergen returned to the glass partition and gestured for plaintiff to come to the glass.  Plaintiff again demanded that Sgt. Rosenbergen contact the Police Commissioner because

he needed to see the Commissioner immediately.  Sgt. Rosenbergen again informed plaintiff that the Commissioner was not available and that he should contact the Commissioner's secretary. Sgt. Rosenbergen also explained to plaintiff that he should not call 911 except for emergencies, as he was tying up somebody who may really need help.

Plaintiff told Sgt. Rosenbergen that he did not know what he was talking about and demanded that Sgt. Rosenbergen contact the Commissioner himself.  Sgt. Rosenbergen conferred with his supervisors about the ongoing issues with plaintiff, who agreed with Sgt. Rosenbergen's assessment of the complaint in accordance with the NRPD procedures.

### D.  THE SECOND INTERVIEW WITH PLAINTIFF

Sgt. Rosenbergen returned to the lobby and asked plaintiff to come back into the interview room with him.  Once inside, Sgt. Rosenbergen told plaintiff that his supervisors had concurred in his view that plaintiff was not making a valid allegation of police "misconduct" that could form the basis of a civilian complaint.  Sgt. Rosenbergen again explained to plaintiff that he should plead "not guilty" to the traffic tickets and that his complaint about 911 needed to be directed at the State Police.  Sgt. Rosenbergen also provided plaintiff a copy of the relevant section from the Manual of Procedure to review with him.  Plaintiff read the provided portion of the Manual and questioned the definition of "misconduct."

Sgt. Rosenbergen gave several examples of allegations of "misconduct" against a police officer.  After being given "threatened" as an example, plaintiff for the first time stated to Sgt. Rosenbergen that Officer Hudson had threatened him in any way during the traffic stop.

When Sgt. Rosenbergen asked him to clarify, plaintiff explained that Officer Hudson was a big guy and had a gun, and, as a result, he felt threatened.  Plaintiff did not claim that Officer

5

Hudson pulled out his gun or made any reference to Officer Hudson having used his gun.  Sgt. Rosenbergen told plaintiff that this was the first time he had said anything about being threatened during the approximately 20 minutes they had been interacting.  He told plaintiff that he felt that plaintiff was just using this allegation to conform to NRPD standards for accepting complaints.

### E.  PLAINTIFF'S REMOVAL FROM THE STATION

Plaintiff then became very angry.  He stood up and began pointing his finger in Sgt. Rosenbergen's face, saying that Sgt. Rosenbergen was not there when he was pulled over and that it was not for Rosenbergen to say whether he felt threatened.  Plaintiff was right next to Rosenbergen at the table – less than two feet apart – while he was doing this.  Rosenbergen reasonably and understandably felt threatened, he did not want the situation to escalate, and he was uncomfortable being with the visibly agitated plaintiff in a secure area of the police station.

Sgt. Rosenbergen stood up, advised plaintiff to stop pointing at him, told plaintiff that the interview was finished, and directed plaintiff to leave the interview room.  Sgt. Rosenbergen informed plaintiff that he was becoming threatening and that plaintiff would probably be placed under arrest if his behavior continued.

Plaintiff did not leave, but instead responded that he was not going to leave until he spoke with the Police Commissioner.  Plaintiff slumped down in his chair and grabbed hold of the arms of the chair.   Plaintiff now became a trespasser in a secure area of the police station.  Sgt. Rosenbergen again told plaintiff that the interview room was a secure area of the building and he reiterated that plaintiff had to leave.  Sgt. Rosenbergen finally told plaintiff that, if he did not leave, Sgt. Rosenbergen would be forced to remove him from the room.  Plaintiff verbally and physically refused.  Given plaintiff's refusal to leave or follow Sgt. Rosenbergen's reasonable

6

instructions, Sgt. Rosenbergen was permitted to use reasonable and necessary force to remove plaintiff from this secure area of the police station.

Sgt. Rosenbergen then grabbed plaintiff's right wrist and the collar of his jacket, stood him up, and walked him out of the interview room into the lobby of the building.  Once Sgt. Rosenbergen grabbed plaintiff's jacket to pull him out of his chair, plaintiff stood up and began yelling even louder.  Sgt. Rosenbergen held plaintiff's jacket and wrist as he escorted plaintiff to the lobby area.  Based on the credible evidence adduced at trial, I find that Sgt. Rosenbergen used the minimum amount of force required to remove him from the secure area of the police station.

Plaintiff insisted that he was not leaving the building.  Sgt. Rosenbergen told plaintiff that he was now in a public area and was free to stay there if he wished.  Sgt. Rosenbergen also gave plaintiff the name of Officer Hudson's supervisor, Lieutenant Marshall, if he wanted to discuss the matter with him directly.  Plaintiff left the police station.

### F. PLAINTIFF'S INJURIES

Although plaintiff initially claimed in this case that he sustained injuries to his neck, back, and head, he no longer asserts any such claims at trial.  Rather, plaintiff's only claims of physical injury are that he sustained two scratches to the side of his neck that have since healed. These scratches are inconsistent with the manner in which plaintiff claims to have sustained them.  Plaintiff originally claimed that he sustained emotional injuries as a result of the incident, but has since waived these claims in exchange for defendants' agreement not to put plaintiff's psychological records into evidence.

### CONCLUSIONS OF LAW

Following this Court's partial grant of summary judgment in favor of defendants, the only remaining claims for trial are: (1) a Fourteenth Amendment sustained due process claim against defendant Rosenbergen; and (2) state common law assault and battery claims against Rosenbergen and the City.  For the reasons set forth below, this Court determines that Sgt. Rosenbergen's use of force does not "shock the conscience" and, therefore, I find for defendants on plaintiff's Fourteenth Amendment claim.  Sgt. Rosenbergen would also be entitled to qualified immunity, as it is not clearly established that the level of force that he used violates the Fourteenth Amendment.

Likewise, this Court finds that Sgt. Rosenbergen used reasonable force to remove plaintiff from a secure area of the police station pursuant to his official duties and was also justified in using this level of force to eject plaintiff, who became a trespasser, from the premises.  Thus, I also find for defendants on plaintiff's assault and battery claims.

### A. FOURTEENTH AMENDMENT EXCESSIVE FORCE

Individuals have a "substantive due process right to be free from excessive force in the 'non-seizure, non-prisoner context.'"  West v. Whitehead, 2008 WL 4201130, at *14 (S.D.N.Y. Sept. 11, 2008) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 253 (2d Cir. 2001)); Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir.1995).  The substantive due process guarantee of the Fourteenth Amendment only protects individuals from "conscience-shocking" exercises of power by government actors. See Johnson, 239 F.3d at 251 (citing County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)); United States v. Salerno, 481 U.S. 739, 746 (1987); Rochin v. California, 342 U.S. 165, 172 (1952).  Only when bodily harm is caused by government action that is "'so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience,' will a constitutional violation result." <u>West</u>, 2008 WL 4201130, at *14 (quoting <u>Lombardi v. Whitman</u>, 485 F.3d 73, 79 (2d Cir. 2007)).

Factors to be considered in excessive force claims in determining whether the constitutional line has been crossed" include (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. <u>Johnson</u>, 239 F.3d at 251-252. (quoting <u>Metzger v. Osbeck</u>, 841 F.2d 518, 520 (3d Cir.1988)).

On analysis of these factors, it is clear that Sgt. Rosenbergen did not apply excessive force to the recalcitrant plaintiff. Plaintiff was refusing to leave a secure area of the police station and acting in a potentially threatening manner towards a police officer. Plaintiff had exhibited a course of conduct during his encounters with the police that day that, at best, made him appear unpredictable; at worst, plaintiff posed a substantial risk to the safety of the police officers and others in the otherwise secure area of the police station.

Immediately preceding the use of force, plaintiff stood up from his chair and pointed his finger at Sgt. Rosenbergen, while shouting at him. When Sgt. Rosenbergen demanded that he leave the secure area of the police station, plaintiff verbally and physically refused, by slumping in his chair, holding the arms of the chair, and stating his refusal to leave. At that point, plaintiff became a trespasser and a potential threat to public safety.

Sgt. Rosenbergen acted in a good faith effort to remove plaintiff from an area which he could conceivably gain access to the cell block, radio room, firearms storage, and other secure areas of the police station. The objective evidence demonstrates that Sgt. Rosenbergen applied

the minimum amount of force needed to remove plaintiff, a substantially larger man, from the interview room and into the public area of the station.

Finally, plaintiff's injuries are admittedly *de minimis*, and there is no medical evidence to support any claims of injury.  In fact, plaintiff has conceded via stipulation all physical and emotional injury claims except the physical injury claim that he sustained two scratches on his neck.  Even if the two scratches on plaintiff's neck were sustained as a result of Sgt. Rosenbergen's use of force, which remains doubtful, they are *de minimis* and patently insufficient to shock this Court's conscience.  See Bove v. New York City, 1999 WL 595620, at *6 (S.D.N.Y. 1999) ("plaintiff's alleged injuries that are supported by the objective hospital records lead me to conclude that, as a matter of law, the force-if any-used by the NYPD on the night in question was at worst, *de minimis,* and insufficient to shock this Court's conscience.") (citing Tierney v. Davidson, 133 F.3d 189, 199 (2d Cir. 1988)).  As the bruise suffered by plaintiff in Bove was considered *de minimis*, so are the negligible scratches allegedly suffered by plaintiff in this case.  See id.

As Sgt. Rosenbergen used a reasonable amount of force necessary to eject plaintiff from secure areas of the police station, I find for defendants on plaintiff's Fourteenth Amendment claim.

### B.  QUALIFIED IMMUNITY

Public officials enjoy qualified immunity from suit for damages under 42 U.S.C. § 1983 for acts undertaken in their official capacity, unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known.  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  Thus, in order for a

plaintiff to pierce a public official's qualified immunity, he must show that the official violated a clearly established constitutional right at the time of the conduct and that the defendant's actions were not objectively reasonable.  See, e.g., Harhay, 323 F.3d at 211.

Sgt. Rosenbergen applied the minimum amount of force necessary to remove plaintiff from a secure area of the police station after he refused to leave.  Thus, plaintiff has suffered no constitutional violation.   In any event, Rosenbergen's actions were objectively reasonable because, as a police officer, he was entitled to use reasonable force in a good faith effort to maintain discipline and order in the police station.  Plaintiff does not have a constitutional right to trespass upon secure areas of a police station, nor does he have a clearly established right to be free from reasonable force necessary to remove him from the premises when he becomes a threat to public safety and does not submit to the authority of a police officer.  Thus, although I have found no constitutional violation, I also find that Sgt. Rosenbergen would nevertheless be entitled to qualified immunity.


### C.  STATE LAW ASSAULT AND BATTERY

An assault is "an intentional placing of another person in fear of imminent harmful or offensive conduct."  United Nat'l Ins. Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 108 (2d Cir.1993).  A battery is "an intentional wrongful physical contact with another person without consent."   Id.   With respect to actions undertaken by law enforcement officers discharging their official duties, an assault or battery takes place *only if* the officers used greater force than was necessary under the circumstances.  Paulino v. U.S., 1996 WL 457303, at *5 (S.D.N.Y. 1996) (citing Jones v. State, 33 N.Y.2d 275, 279 (N.Y.1973)); Diaz v. City of New York, 2006 WL 3833164, at *10 (E.D.N.Y. 2006).  The alleged assault and battery must also be

the proximate cause of the injuries suffered by plaintiff.  See e.g. Pagliuca v. Police Dept. of Nassau County, 87 A.D.2d 586, 586-587 (2d Dep't 1982) (citing Barry v. Manglass, 55 N.Y.2d 803 (N.Y. 1981)).

The use of reasonably necessary force to eject an individual from the premises "whose privilege of remaining thereon has been terminated" cannot subject the occupant to liability for assault and battery.  N.Y. Jur. 2d Assault—Civil Aspects § 14 (citing Noonan v. Luther, 206 N.Y. 105, 108, 99 N.E. 178, 179 (N.Y. 1912) ("after having afforded her a reasonable opportunity to leave, or while she was behaving in a disorderly manner, she refused to go, he had the right to use reasonable force to eject her")).

Sgt. Rosenbergen did not commit any overt threatening act against plaintiff prior to the physical contact to sustain the claim of assault.  See Fariello v. City of New York Bd. of Educ., 199 A.D.2d 461, 463 (2d Dep't 1993); Offenhartz v. Cohen, 168 A.D.2d 268 (1st Dep't 1990). When plaintiff refused to leave a non-public and secure area of the police station, he became a threat to public safety.  At the time of the physical contact, Rosenbergen was discharging his official duties as a police officer by removing a potentially unpredictable individual, whose behavior was escalating, from an area where he could create a further threat to public safety. There is no question that Sgt. Rosenbergen had the right to eject plaintiff from the secure area of the police station, where he was no longer permitted and refused to leave voluntarily.  The credible evidence establishes that Sgt. Rosenbergen applied the level of force necessary to remove plaintiff from his chair and remove him into the public area of the police station.

Even had Sgt. Rosenbergen not been a police officer, when plaintiff refused to leave the secure area of the police station he was guilty of trespass. N.Y. Penal Law § 140.05 defines trespass as follows: "A person is guilty of trespass when he knowingly enters *or remains*

unlawfully in or upon premises." (emphasis supplied).  N.Y. Penal Law § 35.20(2) provides that "A person in possession or control of any premises …  may use any degree of physical force, other than deadly physical force, which he or she reasonably believes to be necessary [to stop a trespass]."  I find that Sgt. Rosenbergen was justified in his use of force to eject plaintiff from the premises, that his use of force was reasonable under the circumstances, that he did not use deadly force and, therefore, that he did not commit an assault or battery.  In fact, one may credibly argue that plaintiff committed a civil assault when he stood up from his chair and pointed his finger in Sgt. Rosenbergen's face.

The credible evidence demonstrates that Sgt. Rosenbergen's use of force was not the proximate cause of plaintiff's alleged injuries.  Plaintiff has offered no medical evidence and, in fact, has withdrawn all injury claims with the exception of the two scratches to his neck.  In addition to the *de minimis* nature of the remaining injury claim, plaintiff's withdrawal of these other claims raises questions about his credibility in this entire matter.

In short, I find that plaintiff failed to sustain his burden that Sgt. Rosenbergen's use of force in discharging his official duties as a police officer was anything other than the minimal force necessary to remove plaintiff from the secure area of the police station and was justified to eject plaintiff, a trespasser, from that area.  Thus, I find in favor of defendants on plaintiff's assault and battery claims.

**D.  DAMAGES**

Because I find in favor of defendants, I need not address damages.

Nevertheless, even if plaintiff had proven a violation of his rights, the *de minimis* nature of his claimed injury would not entitle him to compensatory damages.

13

Punitive damages may be only awarded in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 121 (2d Cir. 2006) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983). To be entitled to an award of punitive damages, a claimant must show a "positive element of conscious wrongdoing." Kolstad v. American Dental Ass'n, 527 U.S. 526, 538 (1999) (internal quotation marks omitted).

Under state law, "[p]unitive damages generally are reserved for rare cases exhibiting malice, fraud, oppression, insult, wantonness, or other aggravated circumstances which effect a public interest." Laurie Marie M. v. Jeffrey T.M., 159 A.D.2d 52, 58, 559 N.Y.S.2d 336, 340 (N.Y. App. Div. 1990) aff'd sub nom. Laurie Marie M. v. Jeffery T.M., 77 N.Y.2d 981, 575 N.E.2d 393 (1991) (citing Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488 (1961); Le Mistral, Inc. v. CBS, 61 A.D.2d 491, 402 N.Y.S.2d 815 (1st Dep't 1978)). "An award of punitive damages must be based on 'quasi criminal conduct or of such utterly reckless behavior' or a demonstrated 'malicious intent' to injure the plaintiff, or gross, wanton or willful fraud or other morally culpable conduct." Id. at 58.

The credible evidence reflects that Sgt. Rosenbergen did not act with evil motive or intent, reckless or callous indifference to plaintiff's federally-protected rights, nor is this one of the "rare cases" of aggravated circumstances in which punitive damages may be awarded under state law. Therefore, even if I found for the plaintiff, punitive damages would not be warranted in this case.

<u>**CONCLUSION**</u>

For the foregoing reasons, I hereby find in favor of the defendants on all of plaintiff's

claims.

Dated: Westbury, New York
       July 8, 2010

Respectfully submitted,

SOKOLOFF STERN LLP
*Attorneys for Defendants*

By: _____
STEVEN C. STERN
355 Post Avenue, Suite 201
Westbury, New York 11590
(516) 334-4500
File No. 100036

15